IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| LUMBERMENS MUTUAL CASUALTY | ) | |
|---|---|---|
| INSURANCE COMPANY, | ) | No. 8-1257 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PEIRCE, RAIMOND, & COULTER, P.C., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER OF COURT**

**SYNOPSIS**

In this civil action, Plaintiff Lumbermens Mutual Casualty Company ("Lumbermens") seeks a declaratory judgment with respect to its insurance obligations to the Peirce Defendants,[1] regarding a lawsuit pending against Defendants in the United States District Court for the Northern District of West Virginia.

In the lawsuit for which coverage is at issue, CSX Transportation, Inc. ("CSX") asserts that the Defendants acted improperly with respect to the filing and prosecution of asbestos claims in West Virginia. According to Plaintiff's description, judgment was granted in the Peirce Defendants' favor on claims sounding in negligence; remaining claims sound in fraud under RICO or the

---

[1] "Peirce Defendants" refers to Peirce, Raimond & Coulter, P.C., Robert Peirce, Jr., Louis A. Raimond, and Mark T. Coulter.

common law.  Accordingly, Plaintiff, pointing to a policy exclusion for final adjudications or judgments of "illegal, dishonest, fraudulent, criminal, or malicious" conduct, now seeks a declaration that it will not be liable for any damages that may ultimately be imposed on the Peirce Defendants in the West Virginia litigation.

Presently before the Court is Defendants' Motion to dismiss, or in the alternative, to transfer the case to the Northern District of West Virginia.  For the following reasons, the Motion will be granted.

**OPINION**

**A. Venue - 28 U.S.C. § 1391(a)**

According to 28 U.S.C. § 1391(a)(2), venue is proper in a district in which a substantial part of the events or omissions giving rise to the claim occurred. There is legal support for the proposition that, in a declaratory action such as this one, venue may lie where the events occurred in the underlying lawsuit for which coverage is sought; and also that venue may lie where the events relating to the insurance policy at issue occurred. See Clarendon Nat'l Ins. Co. v. T.M.I. Enters., LLC, 07-1637, 2008 U.S. Dist. LEXIS 62114 (W.D. La. Aug. 14, 2008).  It is notable that "[m]ere contacts with the venue in question are not sufficient to satisfy § 1391(a)(2); it is necessary that the events contributed to the creation of the specific claim at issue."[2]  Essex Ins. Co. v. MDRB Corp, No. DKC 2006-0326, 2006 U.S. Dist. LEXIS 53241, at *11 (D. Md. June 7, 2006). The burden of proving improper

---

[2]According to the Complaint filed in this action, Plaintiff is an Illinois corporation; Defendant Gilkison is a citizen of Kentucky; Defendant Harron is a citizen of West Virginia; Defendant CSX is a citizen of Virginia and Florida; and the Peirce Defendants are Pennsylvania citizens, with the corporate Pierce Defendant registered to do business in West Virginia.

venue is on the defendant. TJF Assocs. v. Kenneth J. Rotman & Allianex, L.L.C., No. 05-705, 2005 U.S. Dist. LEXIS 11943, at *3 (E.D. Pa. June 17, 2005).

In their Motion, Defendants focus on the fact that this litigation relies on Plaintiff's obligations specifically regarding the West Virginia case. In contrast, Plaintiff suggests that the pertinent issues in a coverage suit surround the contractual relationship between insured and insurer – i.e., the locales of negotiation, issuance, execution, and payment of the policy. It is true that an insurer's coverage obligations regarding an underlying lawsuit might, in some situations, have little to do with the events or omissions giving rise to that lawsuit. For example, coverage litigation might turn on the parties' understanding of a policy term; the parties' verbal communications; issues surrounding an insurer's reasons for denying coverage; or whether nonpayment or other conduct by the insured affected the validity of a policy. Cf. St. Paul Fire & Marine Ins. Co. v. Brother Int'l Corp., No. 05 C 5484, 2006 U.S. Dist. LEXIS 39952, at **9-10 (E.D. Ill. June 1, 2006).

In such cases, details of the underlying car accident, for example, might not constitute a substantial part of the acts or omissions giving rise to the question of the insured's entitlement to coverage. It would be facile, however, to suggest that any action for a declaratory judgment of insurance coverage necessarily arises from the facts related to the insurance contract. Instead, the inquiry must focus on the statutory language of Section 1391(a), and therefore on the nature of the events and omissions giving rise to the particular claim at issue. With the statutory language at the forefront, it is clear that there are cases

in which the pertinent events and omissions are closely tied to an underlying lawsuit, rather than to the formation or execution of the insurance policy itself.

Indeed, the facts of this case provide a ready example. Plaintiff proffers three facts purporting to connect Western Pennsylvania and this litigation: the Pierce Defendants' mailing address here, and the consequent fact that the policy was issued to the law firm at that address, and became effective at that address. These facts, except in the most basic sense, simply did not "give rise" to the Plaintiff's claim in this litigation.[3] The negotiation, execution, formation, issuance, and payment of the Lumbermens insurance policy are not at issue here, in any significant respect. Instead, at issue is whether liability in the underlying West Virginia action will be excluded from coverage – in other words, this particular declaratory judgment action depends on the application of policy language to the claims and events alleged in the West Virginia litigation, and the events unfolding in that litigation itself.[4]

Plaintiff proffers, primarily, two cases in support of its choice of venue. In the first of these, <u>Harleysville Ins. Co. v. Clark</u>, No. 05-5566, 2006 U.S. Dist. LEXIS 97152 (D.N.J. July 21, 2006), the court found that venue was proper in New Jersey because "a substantial part of the events giving rise to the coverage dispute – including the negotiation, payment, and issuance of the policy" occurred in New

---

[3] Of course, but for the negotiation and execution of the insurance policy, the parties would not now be embroiled in litigation. A mere "but for" relationship, however – which is almost endlessly elastic – is not the type of relationship that is, alone, sufficient to confer venue.

[4] I emphasize that I do not hold that in a declaratory judgment case, venue is never proper where the facts relating to the contract occurred; instead, my finding is limited to the facts before me.

Jersey. The court did not, however, discuss the nature of the coverage dispute, or the nexus between the dispute and the contractual facts. Accordingly, the case is unpersuasive for present purposes.[5] In the second, <u>Resource Bank v. Progressive Cas. Ins. Co.</u>, 2007 U.S. Dist. LEXIS 2980 (E.D. Pa. Jan. 11, 2007), the court transferred venue to Virginia because – in addition to the issuance of the policy there, the Plaintiff's residence there, and the application of Virginia law-- the action was related to another case being litigated in Virginia, and the connection between the action and the transferor district was tenuous. In the present case, the Plaintiff does not reside here, this forum's connection to the action is tenuous, and this action is related to litigation in West Virginia. <u>Resource Bank</u> points away from, rather than toward, retaining venue in Pennsylvania.

For all of these reasons, venue is not proper in this district, and transfer would be appropriate under 28 U.S.C. § 1406(a), which permits me to transfer a case "to any district or division in which it could have been brought." Plaintiff asserts that venue may have been proper in West Virginia when there were factual questions surrounding coverage of negligence claims, which might require special interrogatories to the jury; now, however, it argues that venue is no longer proper in that forum. Plaintiff, however, draws no persuasive distinction between the underlying action then and now, other than its own

---

[5] Additionally, in <u>Harleysville</u>, the Plaintiff's chosen forum had a more readily discernible connection to the parties and litigation than is present in this case. In <u>Harleysville</u>, a New Jersey company, which issued insurance only to New Jersey insureds, issued a commercial automobile insurance policy to a New Jersey corporation, with the expectation that the policy would be governed by New Jersey law. The insurer then filed for declaratory judgment regarding coverage for an underlying claim that arose when an employee of the insured, while in a car from the insured's New Jersey location, was in an accident in Maryland. This is in stark contrast to the present matter, where the only connection to this forum stems from the location of the Peirce Defendants.

assessment that the action no longer contains any claims that may be covered by the policy.  As discussed above, it remains that substantial events giving rise to Plaintiff's declaratory judgment claim occurred, and are occurring, in the Northern District of West Virginia.  Plaintiff proffers no reason, other than allegedly improper venue, that this action could not have been brought in West Virginia.  It is, therefore, an appropriate transferee forum.

**B. Venue - 28 U.S.C. § 1404(a)**

Even if venue were proper in this district, however, I note that transfer to the Northern District of West Virginia would be appropriate under Section 1404(a), which provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The movant bears the burden of showing a need for transfer.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).  In assessing a possible transfer of venue, a Court may consider several factors, including the parties' choices of fora; where the claim arose; convenience of the parties and witnesses; practical considerations that could expedite or simplify trial; the level of court congestion in the two fora; the local interest in deciding local controversies at home; and in a diversity case, the familiarity of the two courts with state law. Id. at 879-80.

In this case, these various considerations point to the Northern District of West Virginia.  Plaintiff correctly argues that its choice of forum is entitled to significant weight.  That choice, however, is not dispositive, and receives less deference when transfer would result in negligible inconvenience to Plaintiff, or

when the chosen forum bears little relation to the operative facts of the lawsuit. Sonic Supply, LLC v. Universal White Cement Co., No. 07-CV-04529, 2008 U.S. Dist. LEXIS 58769, at *15 (D.N.J. July 29, 2008). The present Plaintiff, an Illinois corporation, proffers no reason that West Virginia, where it has already been involved in litigation, would be any less convenient than the present forum. Moreover, as discussed above, this Court bears little relation to the operative facts of the coverage issue.

With respect to other factors, the local interest lies with the West Virginia courts. The ultimate outcome of this suit relates to payment of claims resulting from alleged wrongdoing in that forum. The underlying complaint refers to "West Virginia's Asbestos Crisis" and alleges that the Peirce Defendants are responsible for mass asbestos litigation in West Virginia. Judicial economy and the interests of justice, too, weigh in favor of transfer. The West Virginia Court will be best equipped to resolve the coverage issue, as it is already familiar with the underlying litigation. As discussed above, this claim is properly considered as having arisen in West Virginia, where the underlying litigation is underway. With remaining factors weighing fairly equally on either side, the balance of conveniences would weigh in favor of transferring this matter to the Northern District of West Virginia.

**CONCLUSION**

In sum, I find that venue is not proper in this district, but that the case could have been brought in the Northern District of West Virginia. Accordingly, the Complaint will be transferred to the United States District Court for the

Northern District of West Virginia.

**ORDER OF COURT**

AND NOW, this 17th day of April, 2009, it is hereby ORDERED, ADJUDGED, and DECREED that Defendants' Motion to Transfer Venue is hereby GRANTED. This matter is hereby transferred to the United States District Court for the Northern District of West Virginia.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Chief Judge, U.S. District Court